United States District Court<br>For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IO GROUP, INC., <br><br>  Plaintiff, <br><br> v. <br><br> ANTELOPE MEDIA, LLC, et al., <br><br>  Defendants / | No. C-08-4050 MMC <br><br> **ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT; PERMANENT INJUNCTION; VACATING JUNE 4, 2010 HEARING** |

Before the Court is plaintiff IO Group, Inc.'s Application for Default Judgment, filed April 19, 2010. Defendants Antelope Media, LLC ("Antelope"), Sunrise Media, Ltd. ("Sunrise"), Mike Hermann, a.k.a. Maik Herrmann ("Herrmann"), Thorsten Palicki ("Palicki"), and PSI Services, SA ("PSI") have not filed opposition. Having read and considered the papers filed in support of the motion, the Court deems the matter suitable for decision on the moving papers, VACATES the hearing scheduled for June 4, 2010, and rules as follows.

The Clerk having entered the default of the named defendants, each such defendant is deemed to have admitted to knowingly infringing plaintiff's copyrighted works. (See Third Amended Complaint ("TAC") ¶¶ 28-44, 62-65); Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) (holding, upon entry of default, allegations in complaint, other than those relating to the amount of damages, are "taken as true"). As

relief, plaintiff seeks an award of statutory damages, a permanent injunction, and an award of attorney's fees and costs.  The Court considers in turn, each such request.

**A.  Statutory Damages**

Plaintiff has elected to recover an award of statutory damages.  See 17 U.S.C. § 504(a)(1) (providing infringer of copyright liable for either copyright owner's actual damages and infringer's profits or, alternatively, statutory damages).  Where a plaintiff establishes willful infringement, the district court has the discretion to award statutory damages in "a sum of not more than $150,000."  See 17 U.S.C. § 504(c)(2).  "[E]ach work infringed may form the basis of one award" of statutory damages.  See Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc., 259 F.3d 1186, 1193 (9th Cir. 2001) (internal quotation and citation omitted).

Here, plaintiff has established that defendants infringed nine of plaintiff's copyrighted works.  (See Ruoff Decl. ¶ 8-10, Ex. F.)  Given the particular circumstances under which the infringement occurred, the Court finds a maximum award is proper, specifically $1,350,000 (9 x $150,000).  See, e.g., Warner Bros. Entertainment Inc. v. Caridi, 346 F. Supp. 2d 1068, 1074 (C.D. Cal. 2004) (awarding statutory damages of $150,000 for each work infringed, where defendant's infringement was "particularly egregious").  First, defendants gained commercial advantage by using plaintiff's copyrighted works, specifically, by displaying plaintiff's works on defendants' websites, for which they charge their customers, including California residents, a monthly access fee (see Ruoff Decl. ¶ 13; TAC ¶¶ 30, 32), and on which they earn revenue by selling advertising space (see TAC ¶ 30), and by enrolling in "affiliate programs through which [d]efendants receive payments for directing individuals to other websites" (see TAC ¶ 38).  Second, defendants, within a week of learning of the instant lawsuit, transferred ownership of their websites to fictitious names (see TAC ¶¶ 47-49), in an apparent attempt to evade service and hinder plaintiff's ability to locate and identify the infringing parties.  Third, defendants have continued their infringing activities after being notified of the instant action.  (See TAC ¶ 36.)  Fourth, defendants engaged in various technological steps to

1  block plaintiff from gaining access to defendants' websites (see TAC ¶ 37), in an apparent
2  attempt to prohibit plaintiff from learning the full extent of the infringing conduct.  Finally,
3  plaintiff has offered evidence to show that its actual loss from defendants' infringing activity
4  may well be in excess of $1,350,000 (see Pl.'s Appl. at 11:27-12:2; Ruoff Decl. Ex. B); by
5  electing to allow their respective defaults to be entered rather than respond to the instant
6  action, defendants necessarily have precluded plaintiff from determining whether such
7  actual loss in fact was incurred, as well as from determining the amount of profit
8  defendants earned, and continue to earn, from the infringing conduct.
9       Accordingly, plaintiff will be awarded the sum of $1,350,000 in statutory damages.

**B.  Permanent Injunction**

**1.  Injunction Prohibiting Further Infringement**

Plaintiff seeks a permanent injunction to prohibit defendants from further infringing plaintiff's copyrighted works.

"As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993).  Further, where "there has been a history of continuing infringement and a significant threat of future infringement remains, it is appropriate to permanently enjoin the future infringement of works owned by the plaintiff but not in suit." See Walt Disney Co. v. Powell, 897 F.2d 565, 566-68 (D.C. Cir. 1990) (holding where defendant willfully infringed plaintiff's copyrights in "Mickey Mouse and Minnie Mouse," and threat existed that such defendant would continue to infringe in future, district court properly enjoined defendant from infringing copyrights in "all other Disney cartoon characters").

Here, because defendants continue to operate commercial websites that display infringing material, a threat exists that defendants will continue to infringe plaintiff's copyrighted works, and such threat is not limited solely to the nine works as to which plaintiff has offered evidence of infringement.

//

...

...

...

Accordingly, defendants will be enjoined from engaging in any infringing use of plaintiff's "audiovisual works, photographs, or other [copyrighted] materials." (See TAC, prayer ¶ 5.)

**2. Injunction Prohibiting Transfer of Assets**

Plaintiff also seeks an order "enjoining [d]efendants from transferring any assets until the judgment is satisfied." (See Pl.'s Appl. at 21:15.) More specifically, plaintiff seeks an order enjoining defendants from "further disposition of [ ] any domain names registered to [defendants] until any judgment for money damages has been satisfied." (See TAC, prayer ¶ 8.)

The TAC alleges the following facts pertinent to such request for injunctive relief. Prior to the filing of the initial complaint, the infringing activity was occurring on a website registered to Antelope Media LLC, a citizen of Arizona. (See TAC ¶¶ 3, 25.) Within a week of learning that plaintiff had filed the instant action, Antelope, acting through its officers and owners Herrmann and Palicki, transferred its domain names, some to Sunrise and others to "fictitious names" under which Herrmann, Palicki, and Sunrise operated. (See TAC ¶¶ 27, 48-49, 53, 103.) None of the transferees is a citizen of the United States. (See TAC ¶¶ 4-6, 49.) Sunrise, Herrmann, and Palicki made such transfers with the "intent to hinder, delay or defraud [plaintiff]" (see TAC ¶ 104), and did not pay to Antelope "reasonably equivalent value" for the domain names (see TAC ¶ 119). After Antelope's domain name registrations were transferred, Antelope's remaining assets were "unreasonably small in relation to [its] business" (see TAC ¶ 105), Antelope became "insolvent" (see TAC ¶ 119) and it was "dissolved" (see TAC ¶ 3).

The above facts are sufficient to establish a claim under California's Uniform Fraudulent Transfer Act ("UFTA"), see Cal. Civ. Code § 3439.04, as alleged in the Eighth Cause of Action. Under the UFTA, and "[s]ubject to applicable principles of equity," see Cal. Civ. Code § 3439.07(a)(3), a plaintiff may obtain "[a]n injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or its proceeds," see Cal. Civ. Code § 3439.07(a)(3)(A).

4

Here, given that defendants fraudulently transferred ownership of the domain names from a domestic company, which could have been readily located, to companies and individuals residing outside the United States, it is readily apparent defendants were attempting to preclude or at least make it considerably more difficult for plaintiff to locate any party against whom a judgment could be executed. Under such circumstances, and given that plaintiff apparently is aware of the current location of the entities who presently own the domain names, the Court finds it appropriate to prohibit defendants from further transferring ownership of the domain names, or the proceeds thereof, and the record discloses no equitable reason why plaintiff should not be granted such relief.

Accordingly, defendants will be enjoined from transferring the domain names formerly registered to Antelope, or the proceeds thereof, until they have paid the judgment.

**C. Attorney's Fees and Costs**

Under the Copyright Act, "the court in its discretion may allow the recovery of full costs by or against any party" and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." See 17 U.S.C. § 505.

In deciding whether to award such fees and costs, a district court "should consider, among other things, the degree of the success obtained; frivolousness; motivation; objective unreasonableness (both in the factual and legal arguments in the case); and the need in particular circumstances to advance considerations of compensation and deterrence." See Historical Research v. Cabral, 80 F.3d 377, 379 n.1 (9th Cir. 1996). Here, plaintiffs have successfully obtained the relief sought, specifically, a large monetary judgment, as well as a permanent injunction. Because defendants did not respond to the merits of plaintiff's claims, any showing they might have made to establish a non-frivolous defense and/or that they were acting in good faith has been waived. Indeed, as noted, defendants, by not responding to the TAC and by allowing the Clerk to enter their respective defaults, have admitted they willfully infringed plaintiff's copyrights. Under such circumstances, the Court finds it appropriate to award plaintiff its full costs, as reasonably incurred, as well as its reasonable attorney's fees.

## CONCLUSION

For the reasons stated above, plaintiff's application for default judgment is hereby GRANTED, as follows:

1. To the extent the application seeks an award of statutory damages, the application is hereby GRANTED, and plaintiff shall have judgment against defendants, jointly and severally, in the amount of $1,350,000.

2. To the extent the application seeks a permanent injunction to prohibit future infringement, the application is hereby GRANTED. Accordingly, defendants, their agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with them, are hereby ENJOINED from copying, posting or making any other infringing use or infringing distribution of plaintiff's audiovisual works, photographs, or other copyrighted material.

3. To the extent the application seeks an order prohibiting defendants from transferring assets until the judgment is paid, the application is hereby GRANTED. Accordingly, defendants, their agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with them, are hereby ENJOINED from transferring any domain name, or the proceeds thereof, formerly registered to Antelope, until such time as the judgment entered herein has been paid.

4. To the extent the application seeks an award of full costs, including attorney's fees, pursuant to 17 U.S.C. § 505, the application is hereby GRANTED. Plaintiff shall file a motion for its full costs, including attorney's fees, no later than 14 days from the entry of judgment. See Civil L.R. 54-5(a).

The Clerk shall enter final judgment in conformity herewith.

**IT IS SO ORDERED.**

Dated:  May 28, 2010

_____
MAXINE M. CHESNEY
United States District Judge